United States District Court
Northern District of California

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  San Francisco Division

11    T.R.,                                Case No. 19-cv-04353-LB

12              Plaintiff,
                                           **ORDER GRANTING PLAINTIFF'S**
13        v.                               **MOTION FOR SUMMARY**
                                           **JUDGMENT AND DENYING**
14    ANDREW SAUL,                         **DEFENDANT'S CROSS-MOTION FOR**
      Commissioner of Social Security,     **SUMMARY JUDGMENT**
15
              Defendant.                   Re: ECF Nos. 20, 23
16

17

18                      **INTRODUCTION**

19        Plaintiff T.R. seeks judicial review of a final decision by the Commissioner of the Social

20    Security Administration denying her claim for supplemental security income ("SSI") benefits

21    under Title XVI of the Social Security Act ("SSA"). [1] The plaintiff moved for summary

22    judgment.[2] The Commissioner opposed the motion and filed a cross-motion for summary

23    judgment.[3] Under Civil Local Rule 16-5, the matter is submitted for decision by this court without

24

25

26    [1] Mot. – ECF No. 20. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations
      are to the ECF-generated page numbers at the top of documents.

27    [2] *Id*. at 1.

28    [3] Cross-Mot. – ECF No. 23.

      ORDER – No. 19-cv-04353-LB

oral argument. All parties consented to magistrate-judge jurisdiction.[4] The court grants in part the plaintiff's motion for summary judgment, denies the Commissioner's cross motion, and remands for further proceedings.

## STATEMENT

### 1. Procedural History

On August 4, 2015, the plaintiff, then age 47, filed a claim for SSI benefits under Title XVI the Social Security Act.[5] The plaintiff alleged the following medical conditions: arthritis of the knees and feet, a pinched nerve on the neck, post-traumatic stress disorder ("PTSD"), depression, carpal-tunnel syndrome, asthma, anxiety, and obesity.[6] She alleged an onset date of January 30, 2015.[7] Her claim was denied both initially on January 20, 2016, and upon reconsideration on July 22, 2016.[8]

On August 25, 2016, the plaintiff asked for a hearing before an Administrative Law Judge ("ALJ").[9] On November 21, 2017, the ALJ held a hearing and heard testimony from the plaintiff (represented by Harvey P. Sackett, an attorney), and a vocational expert ("VE"), Lawrence K. Haney.[10] On April 16, 2018, the ALJ issued a "not disabled" ruling.[11] The plaintiff sought review from the Appeals Council, which denied review on March 11, 2019.[12]

---

[4] Consent Forms – ECF Nos. 9, 13.

[5] AR 197. Administrative Record ("AR") citations refer to the page numbers in the bottom-right hand corner of the AR.

[6] AR 219.

[7] AR 80.

[8] AR 91, 109.

[9] AR 129.

[10] AR 41–78.

[11] AR 12–27.

[12] AR 6.

United States District Court
Northern District of California

The plaintiff timely filed this action for judicial review and moved for summary judgment.[13] The Commissioner filed a cross-motion for summary judgment.[14] All parties consented to magistrate-judge jurisdiction.[15]

## 2. Summary of Administrative Record

The plaintiff alleges that she was disabled by arthritis of the knees and feet, a pinched nerve on the neck, post-traumatic stress disorder ("PTSD"), depression, carpal-tunnel syndrome, asthma, anxiety, and obesity.[16] At the administrative hearing, she submitted records to support her claim from the following providers: Kelley Stewart, F.N.P., who treated the plaintiff regularly since 2014 and completed a physician's medical-source statement;[17] licensed social worker Caroline Cangelori, the plaintiff's treating licensed clinical-social worker;[18] Aparna Dixit, Ph.D., who provided an examining psychologist's report of the plaintiff;[19] Phaedra Caruso-Radin, Psy.D., the state examining psychologist;[20] and Eugene McMillan, M.D., the state examining physician.[21]

Because the plaintiff contends that the ALJ erred by giving too little weight to treating opinions —specifically that of nurse practitioner Kelley Stewart — this order recounts that opinion fully.

Ms. Stewart began treating the plaintiff in December 2014 for knee, hand, and back pain, migraines, and a pinched nerve.[22] Ms. Stewart met with and treated the plaintiff every month or

---

[13] Mot. – ECF No. 20.

[14] Cross-Mot. – ECF No. 23.

[15] Consent Forms – ECF Nos. 9 & 13.

[16] AR 219.

[17] AR 397–400.

[18] AR 393–96.

[19] AR 385–88.

[20] AR 99–106.

[21] AR 389–92.

[22] AR 397.

two through at least 2017.[23] During this time, Ms. Stewart ordered and oversaw MRI's of the plaintiff's back and right knee and x-rays of the right ankle and bilateral knees.[24] Ms. Stewart filled out a Physicians Medical-Source Statement on June 25, 2016 and signed off on a Mental Medical-Source Statement on April 13, 2016.[25]

In April 2016, Ms. Stewart co-signed a mental medical-source statement with licensed social worker Caroline Cangelori that reflected a diagnosis of severe major-depressive disorder with psychotic features and Post Traumatic Stress Disorder ("PTSD").[26] The plaintiff showed the following symptoms: depression, loss of interest in activities (anhedonia), memory deficits, appetite disturbance, decreased energy, thoughts of suicide, hallucinations, psychomotor agitation or retardation, sleep disturbance, problems interacting with the public, difficulty with concentration, and paranoia.[27] Her psychotherapy resulted in "slow progress," and prescribed Prozac, which was having "minimal effect."[28]

The plaintiff frequently forgot what she was doing and appointments.[29] She had difficulty remembering locations and work-like procedures.[30] She had a moderate impairment in her ability to understand and remember short and simple instructions and detailed instructions.[31] She had trouble with detailed instructions, even with things like her grandchildren's homework.[32] The plaintiff's psychologically based symptoms "have a huge impact" on her daily life,[33] and "due to hypervigilance, she had trouble interacting with the public and strangers" and "has cursed at

_____

[23] *Id.*

[24] AR 347, 380–84.

[25] AR 393–400.

[26] AR 393–96.

[27] AR 393.

[28] *Id.*

[29] AR 394.

[30] *Id.*

[31] *Id.*

[32] AR 395.

[33] *Id.*

United States District Court
Northern District of California

bosses due to frustration and her symptoms."[34] The plaintiff "gets help from her family" and "rarely leaves home due to these symptoms and interacts minimally with others when she does."[35] She is "unable to concentrate for long periods of time."[36]

The plaintiff had marked impairment in her abilities to maintain attention and concentration for extended periods, to perform activities within a schedule, to work and coordinate with or in proximity to others without being unduly distracted by them, and to complete a normal workday/workweek without interruptions from psychologically based symptoms.[37] She had marked difficulties in maintaining social functioning and in concentration, persistence, and pace.[38] She had moderate impairments in her ability to carry out detailed instructions, make simple work-related decisions, interact appropriately with the general public, accept instructions, respond properly to criticism from supervisors, and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.[39] She had mild impairments in her ability to sustain an ordinary routine without special supervision and to ask simple questions or request assistance.[40] The plaintiff's limitations had existed for over five years and would continue for at least another twelve months beyond the date of the statement.[41]

In the June 2016 medical-source statement, Ms. Stewart noted that the plaintiff had chronic back pain in both knees and her lower back since 2011.[42] The pain became worse when the plaintiff sat and stood for long periods.[43] She used a cane to walk due to swelling and tenderness

---

[34] Id.

[35] Id.

[36] Id.

[37] AR 394–95.

[38] AR 395.

[39] AR 394–395.

[40] AR 395.

[41] AR 395–396.

[42] AR 397.

[43] Id.

United States District Court
Northern District of California

of the joints, muscle spasms, and an abnormal gait.[44] These symptoms were treated with chronic-pain medications, physical therapy and steroid injections.[45]

The plaintiff's functional limitations were as follows. The plaintiff could walk two city blocks without rest or severe pain,[46] she could sit for thirty hours at one time before needing to get up,[47] and she could stand for ten minutes before needing to sit down or walk around.[48] In a normal eight-hour workday, the plaintiff could sit for one hour, stand for less than one hour, and walk for one hour.[49] During a normal eight-hour workday, the plaintiff needed to take unscheduled breaks, be permitted to shift positions from sitting, standing or walking due to pain,[50] and have periods of walking around every one to two hours for five to ten minutes.[51] The plaintiff must use a cane whenever she walks.[52]

The plaintiff could occasionally lift less than ten pounds.[53] She could frequently look down, turn her head right or left, look up, and hold her head in a static position.[54] She could rarely twist, stoop, crouch or squat, climb ladders or stairs.[55] She had significant limitations with handling or fingering.[56] She could use both her right and left hand, fingers, and arms for twenty percent of an

---

[44] *Id.*

[45] *Id.*

[46] AR 398.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] AR 399.

[51] AR 398.

[52] AR 399.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] AR 400.

United States District Court
Northern District of California

1   eight-hour workday.[57] Her impairments were likely to produce "good days" and "bad days," and
2   she was thus, on average, likely to be absent from work for more than four days per month.[58]

3       The psychological conditions and symptoms affecting the plaintiff's physical condition were
4   depression, loss of interest in activities, anxiety and panic attacks, sleep disturbance, and problems
5   interacting with the public.[59] During the typical workday (meaning for 34 to 66 percent of an
6   eight-hour workday), the plaintiff frequently would experience pain or other symptoms severe
7   enough to interfere with the attention and concentration needed to perform even simple work
8   tasks.[60]

9

10  **3.   Administrative Proceedings**

11  **3.1    Disability-Determination Explanation (DDE)**

12      During the administrative process, non-examining doctors generated two disability-
13  determination explanations ("DDE"), one on January 11, 2016, related to the plaintiff's initial
14  application, and another on July 20, 2016, on reconsideration.[61]

15      At the initial level (even with the plaintiff's arthritis of the knees and feet, a pinched nerve on
16  her neck, carpal-tunnel syndrome, asthma, weight issues, PTSD, and anxiety), the DDE
17  determined that the plaintiff was not disabled.[62]

18      On reconsideration, the plaintiff was diagnosed with severe osteoarthrosis and allied disorders,
19  severe affective disorders, and possibly non-severe substance addiction disorder, but not
20  substance-abuse disorder.[63] The DDE again determined the plaintiff was not disabled.[64]

21

22  _____

23  [57] *Id.*

24  [58] *Id.*

    [59] AR 398.

25  [60] *Id.*

26  [61] AR 79–110.

    [62] AR 84, 90.

27  [63] AR 100, 108.

28  [64] AR 108.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 3.2    Administrative Hearing

The plaintiff appeared before the ALJ on November 21, 2017.[65] She was represented by her attorney, Harvey P. Sackett.[66] Also present was VE Lawrence K. Haney.[67]

#### 3.2.1    Plaintiff's Testimony

The plaintiff testified as follows. She had been homeless and used her daughter's address for a time.[68] She obtained her own residence shortly before the ALJ hearing.[69] She is 5'8" and weighs 285 pounds.[70] She has an eleventh-grade education.[71]

Before her injury, she worked in several positions during the relevant fifteen-year timeframe.[72] She worked as a janitorial worker, cleaning airplanes in 2002 for approximately one year.[73] She worked inside the plane, wiping the plane down, vacuuming the plane, restocking the bathrooms, and picking up trash.[74] The trash bags were large and could weigh more than 20 pounds.[75] Her duties required lifting up to more than 25 pounds at a time, frequent bending down to arms-length.[76]

The plaintiff worked as an in-home care provider for approximately two years from 2005 to 2008.[77] She "cleaned, cooked, washed clothes, bathed, and ran errands" for a tall man who could sit and stand by himself but required her assistance in bathing, showering, and getting out of bed

---

[65] AR 39–78.

[66] AR 39.

[67] Id.

[68] AR 44.

[69] Id.

[70] AR 45.

[71] Id.

[72] Id.

[73] AR 45–46.

[74] AR 46–47, 63.

[75] AR 63.

[76] AR 47, 49.

[77] AR 46.

and chairs.[78] In 2008, she worked in childcare for a family with two children, ages six and two.[79] The children weighed approximately forty pounds and twenty-five pounds respectively and had to be picked up every day.[80]

In January 2015, the plaintiff's lower back went out and she had arthritis in her knees so she could no longer work.[81] She is right-handed.[82] She started using a cane in 2017, which she always used to avoid falling down.[83] Her "knee would give out and [her] ankles would give out."[84] She received cortisone shots in her knees that help with the pain for about one to two weeks at a time.[85] Her doctors discussed with her the possibility of getting knee-replacement surgery after the cortisone shots stopped working.[86] The plaintiff's doctors also discussed with her the effect of her weight on her pain levels in her knees and back.[87] They discussed surgery to help with her weight loss, but the plaintiff was hesitant because it is "a scary thing," and she knew people who had weight-loss surgery, and it "wasn't good for" them.[88]

The plaintiff had emotional problems stemming from "a lot of things from the past," which had been "ongoing," but she had never sought psychological help because she "thought it was something I could fix, but couldn't."[89] Ultimately, she decided to seek help when she was "feeling

---

[78] AR 49–50.

[79] AR 51.

[80] *Id.*

[81] AR 19.

[82] AR 44.

[83] AR 58–59.

[84] AR 59.

[85] AR 53, 58.

[86] AR 54, 58.

[87] AR 54.

[88] *Id.*

[89] AR 52.

down and out."[90] She took Zoloft for her mental health, which helped a "little bit."[91] She usually sees a therapist or counselor "at least once a month."[92]

The plaintiff's symptoms affected her ability to care for herself and perform household tasks. She "had to have a lot of help come in" when she "couldn't perform the regular duties" at her home.[93] Her brother helped her clean, mop, do dishes, and other household chores.[94] A typical day for her was getting up and trying to do a few daily tasks like cleaning.[95] She was able to do "light dishes [and] light mopping" but needed her daughter to help her clean the house and do laundry.[96] She could do these things for about 10 to 15 minutes and then she needed to take a break.[97] She was able to make quick meals that take no more than 15 to 30 minutes to prepare.[98] Standing in the shower was challenging, so she took quick showers.[99]

In response to her representative's questions, the plaintiff testified that she took a few road trips to Las Vegas and Reno with her sister, who drove.[100] While in Las Vegas, the plaintiff "mainly stayed in the room and walked around as much as [she] could with [her] cane."[101] She walked around the casino hotel and did a bit of gambling, about twice a day.[102] She also went camping.[103] The plaintiff's sister drove her, and they parked right in front of the cabin.[104] She

---

[90] AR 53.

[91] *Id.*

[92] *Id.*

[93] AR 51.

[94] AR 52.

[95] *Id.*

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] *Id.*

[100] AR 56.

[101] *Id.*

[102] AR 56–57.

[103] AR 57.

[104] *Id.*

United States District Court
Northern District of California

stayed in and sat on the porch in a swing most of the time.[105] She did not go on any hikes, and her sister prepared all of the meals.[106]

### 3.2.2   VE's Testimony

VE Haney testified at the hearing.[107] He characterized the plaintiff's prior jobs as child monitor (DOT code 301.677-101, SVP-3, medium), home attendant (DOT code 354.477-014, SVP-3, medium, heavy as performed), and airplane cleaner (DOT code 919.687-014, SVP-1, medium, light as performed).[108]

The ALJ posed the first hypothetical:

> An individual the same age, education and work experience as the claimant limited to less than the full range of light work . . . [who can] lift/carry 20 pounds occasionally, 10 pounds frequently, [can] sit six hours, stand/walk four, push/pull as much as lift/carry. [They can] climb ramps and stairs occasionally . . . never climb ladders, ropes, and scaffold . . . frequently balance . . . occasionally stoop, kneel, crouch, crawl. [There can be] no unprotected heights.[109]

The VE testified that this would rule out all past work.[110] He listed three jobs that such a person could perform: cashier II (DOT code 311.462-010, light SVP-2) with 285,327 jobs nationally; sales attendant (DOT code 299.677-010, light SVP-2) with 204,095 jobs nationally; and silver wrapper (DOT code 318.687-018, SVP-2) with 106,997 jobs nationally.[111]

The ALJ posed a second hypothetical, "adding the requirement that the hypothetical individual used a cane for ambulation" but keeping all other elements the same.[112] The VE said that he did not believe a sales-attendant job would be appropriate given this added restriction, but he said that the other two occupations were available.[113]

---

[105] Id.

[106] AR 57–58.

[107] AR 60.

[108] AR 62.

[109] Id.

[110] Id.

[111] AR 65.

[112] Id.

[113] AR 65–66.

The ALJ posed a third hypothetical:

> [An individual who has] less than the full range or light work . . . [can] lift/carry 20 pounds
> occasionally, 10 pounds frequently, [can] sit [for] six hours, stand [for] two with alternate
> [options] to sit for five minutes after every 20 minutes of standing. [They can] walk two
> [hours] with an alternate to sitting for five minutes after 20 minutes of walking . . .
> frequent reaching overhead left and right, reaching in other directions left and right …
> climb ramps and stairs occasionally . . . never climb ladders, ropes, and scaffolds . . .
> occasionally balance[,] stop, kneel, crouch, [and] crawl . . . [can have] no unprotected
> heights . . . occasionally operate a motor vehicle.[114]

The VE testified that the prior discussed positions — as a cashier, with 285,000 jobs nationally
and the silver wrapper, with 106,997 jobs nationally — would still be applicable.[115] He testified
that a job as a ticket taker (DOT code 344.667-010, SVP-2 light) with 6,802 jobs nationally and
fund-raising telemarketer (DOT code 299.357-014, SVP 2 sedentary) with 169,592 jobs nationally
would also be available.[116]

### 3.3    Administrative Findings

The ALJ analyzed the five-step sequential evaluation process to determine whether the
plaintiff was disabled and concluded that she was not.[117]

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity
since her application date of July 9, 2015.[118]

At step two, the ALJ found that the plaintiff had three severe impairments: osteoarthritis of the
knee and back; cervical disc disease with mild to moderate canal stenosis; and obesity.[119] The ALJ
found that these impairments were severe because they "significantly limit the ability to perform
basic work activities."[120]

---

[114] AR 66.

[115] Id.

[116] AR 67–69.

[117] AR 27.

[118] AR 17.

[119] Id.

[120] Id.

United States District Court
Northern District of California

The ALJ found the plaintiff's obesity to be severe because the "weight of evidence establishes that this condition has contributed in combination with her other medically determinable impairments to significantly limit[ed] the claimant's ability to perform basic work activities."[121]

The ALJ considered the "Paragraph B" criteria and found that the plaintiff had "mild limitation" in the area of understanding, remembering, or applying information," in "interacting with others," and in "concentrating, persisting, or maintaining pace," and had no limitations in "adapting or managing oneself."[122] The ALJ thus found that the plaintiff's medically determinable mental impairments caused no "more than minimal limitation in the claimant's ability to perform basic mental work activities" and "caused no more than 'mild' limitation in any of the functional areas," and so, it is "nonsevere."[123]

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments.[124] The plaintiff did not meet Listing 1.02 because the "evidence does not establish gross anatomical deformity with appropriate medically acceptable imaging."[125]

The ALJ then determined the plaintiff's residual-functional capacity ("RFC").[126] The ALJ considered the plaintiff's symptoms and the extent to which they could be reasonably accepted as consistent with the objective medical evidence and other evidence.[127] The ALJ followed a two-step process.[128] First, the ALJ determined that the plaintiff's medically determinable impairments could reasonably cause the alleged symptoms.[129] Second, the ALJ found that the intensity,

United States District Court
Northern District of California

---

[121] *Id.*

[122] AR 18.

[123] AR 17–18.

[124] AR 18.

[125] *Id.*

[126] AR 18–25.

[127] AR 18.

[128] *Id.*

[129] AR 20.

1    persistence, and limiting effects of these symptoms, as alleged by the plaintiff, were not consistent

2    with the medical evidence in the record.[130]

3       At step four, the ALJ found that the plaintiff was unable to perform any past relevant work.[131]

4       At step five, the ALJ concluded that based on the plaintiff's age, education, work experience,

5    and residual functional capacity, she was capable of making a successful adjustment to other work

6    that exists in significant numbers in the national economy.[132]

7

8                               **ANALYSIS**

9       Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the

10    Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set

11    aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or

12    are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d

13    586, 591 (9th Cir. 2009) (internal citation and quotation marks omitted); *see* 42 U.S.C. § 405(g).

14    "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

15    relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

16    *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The reviewing court should uphold "such

17    inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark*

18    *v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record

19    supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision

20    and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

21    "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless."

22    *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

23

24

25

26    _____

27    [130] *Id.*

     [131] AR 25.

28    [132] AR 26.

United States District Court
Northern District of California

1

**GOVERNING LAW**

2      A claimant is considered disabled if (1) he suffers from a "medically determinable physical or

3   mental impairment which can be expected to result in death or which has lasted or can be expected

4   to last for a continuous period of not less than twelve months," and (2) the "impairment or

5   impairments are of such severity that he is not only unable to do his previous work but cannot,

6   considering his age, education, and work experience, engage in any other kind of substantial

7   gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(A) & (B). The

8   five-step analysis for determining whether a claimant is disabled within the meaning of the Social

9   Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

10
11
12   **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

13
14   **Step Two**. Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

15
16
17
18   **Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

19
20
21   **Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

22
23
24
25
26   **Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

27   For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to

28

*United States District Court*
*Northern District of California*

1  the Commissioner. *Gonzales v. Sec'y of Health & Human Servs.*, 784 F.2d 1417, 1419 (9th Cir.

2  1986).

3  **ANALYSIS**

4      The plaintiff contends that the ALJ erred by (1) finding the plaintiff's mental impairments

5  were non-severe, (2) rejecting the medical opinions, (3) rejecting the plaintiff's subjective

6  testimony, (4) finding that the plaintiff could perform work that existed in significant numbers in

7  the national economy, and (5) not having the legal authority to hear this case under the

8  Appointment's Clause.[133]

9      For the reasons set forth below, the court grants the plaintiff's motion for summary judgement

10  in part and remands for further proceedings consistent with this order.

11

12  **1.  Whether the ALJ Erred by Finding the Plaintiff's Mental Impairments Non-Severe**

13      The plaintiff concludes that the ALJ erred by asserting that the plaintiff's functional limitations

14  in each paragraph B category were "no more than mild."[134] The court remands on this ground.

15  **1.1  Legal Standard**

16      At step two of the five-step sequential inquiry, the ALJ determines whether the claimant has a

17  medically severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273,

18  1290 (1996). The ALJ must consider the record, including evidence that both supports and

19  detracts from their final decision. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). An

20  impairment is not severe if it does not significantly limit the claimant's mental or physical abilities

21  to do basic work activities. 20 C.F.R. § 404.1521(a).[135] Basic work activities are "abilities and

22  aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting,

23  pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b).246. To determine the

24

25  ---

    [133] Mot. – ECF No. 20 at 6–20.

26      [134] *Id.* at 12.

27      [135] The Social Security Administration promulgated new regulations, including a new § 404.1521, effective March 27, 2017. The previous version, effective to March 26, 2017, was in effect as of the

28  date of the ALJ's hearing. (16-01665).

*United States District Court*
*Northern District of California*

1   severity of a mental impairment, the ALJ must consider four broad functional areas: activities of

2   daily living; social functioning; concentration, persistence, and pace; and episodes of

3   decompensation. 20 C.F.R. § 404.1520a.[136]

4       The burden at Step Two is low. In particular, the Ninth Circuit has held that "the step two

5   inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at

6   1290 (citing *Bowen v. Yuckert*, 482 U.S. 137 at 153–54 (1987)). Thus, "[a]n impairment or

7   combination of impairments can be found 'not severe' only if the evidence establishes a slight

8   abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id.*

9   (internal quotation marks omitted) (citing SSR 85–28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th

10  Cir.1988)).

11      **1.2   Application**

12      Here, the ALJ found the plaintiff's mental impairments were non-severe because in each of the

13  four broad functional categories, the plaintiff had no more than mild limitations. The ALJ based

14  this assessment on a lack of evidence in nurse practitioner Kelley Stewart's treatment notes.[137] Ms.

15  Stewart noted that during the years she treated the plaintiff, "the claimant's psychiatric status was

16  normal."[138] But Ms. Stewart noted the plaintiff's issues with depression in December 2015, and

17  she documented that the plaintiff was seeing LCSW Cangelori and was taking Prozac as of June

18  2015 and switched to Zoloft in June 2016.[139]

19      The ALJ erred by deeming the plaintiff's impairments non-severe solely based on Ms.

20  Stewart's opinion. Dr. Dixit, the state's consulting psychological examiner, determined that the

21  plaintiff had mild difficulty in most categories but "mild to moderate difficulty interacting dealing

22  with the public."[140] The ALJ said that the plaintiff would have a mild limitation in this category.[141]

23

---

24  [136] *Id.*

25  [137] AR 22.

26  [138] *Id.*

27  [139] AR 458.

28  [140] AR 387.

    [141] AR 18.

An impairment can be found not severe only if the totality of the evidence taken as a whole establishes no more than a slight abnormality with a minimal effect on the individual's ability to work. *Smolen*, 80 F.3d at 1290. Here, as described above, there is ample medical evidence showing the plaintiff's issues with depression, and its "mild-to-moderate" effects on her public interactions.[142] Accordingly, the ALJ improperly applied the standard required to decide whether the plaintiff's impairment was severe.

### 2.   Whether the ALJ Erred in Rejecting the Medical Opinions

The plaintiff next argues that the ALJ improperly assigned little weight to her treating nurse practitioner, Kelly Stewart.[143] The ALJ erred in its weighing of Ms. Stewart's opinion.

### 2.1   Legal Standard

The ALJ is responsible for "'resolving conflicts in medical testimony and for resolving ambiguities.'" *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews*, 53 F.3d at 1039). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).

"In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).

An ALJ errs when he "rejects a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13. "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the

---

[142] AR 17–18.

[143] Mot. – ECF 20 at 10; AR 23.

United States District Court
Northern District of California

treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole[, and] the specialty of the physician providing the opinion. . . ." *Orn*, 495 F.3d at 631. (citing 20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (an ALJ need not agree with everything contained in the medical opinion and can consider some portions less significant than others).

The ALJ must consider the opinions of other "medical sources who are not acceptable medical sources and [the testimony] from nonmedical sources." 20 C.F.R. § 404.1527(f). The ALJ is required to consider observations by "other" sources as to how an impairment affects a claimant's ability to work. *Id*. Nonetheless, an "ALJ may discount [the] testimony" or an opinion "from these other sources if the ALJ gives … germane [reasons] for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (cleaned up). "[A]n opinion from a medical source who is not an acceptable medical source may outweigh the medical opinion of an acceptable medical source[.]" 20 C.F.R. § 404.1527(f)(1). "For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." *Id*.

### 2.2    Application

The plaintiff contends that the ALJ erred by assigning "limited" weight to Ms. Stewart's opinion.[144] She asserts that nurse practitioners qualify as accepted "other sources" to show the severity of impairments based on 20 C.F.R. §404.1513(d)(1).[145] She points out that consulting medical examiner Dr. McMillan examined the Plaintiff and found that she had degenerative-joint disease in her knees.[146] Additionally, consulting psychological examiner Dr. Dixit found mental

---

[144] AR 24.

[145] Mot. – ECF No. 20 at 11.

[146] *Id.*; AR 392.

1    limitations.[147] The plaintiff contends that, after these assessment by Dr. McMillan and Dr. Dixit, a

2    nurse practitioner's opinion illuminates the severity of the condition, as an acceptable "other"

3    source.[148]

4        The ALJ gave Ms. Stewart's medical statements limited weight for the following reasons: (1)

5    her opinion was not supported by her own treatment notes; (2) she was not a psychologist or a

6    psychiatrist or other medical professional specializing in mental-health care, and her opinions

7    were inconsistent with those opinions of the consulting psychological examiner; (3) her opinions

8    were not supported by an explanation; and (4) the record indicates that LCSW Cangelori, not Ms.

9    Stewart, was treating the plaintiff for her mental health conditions.[149] Additionally, the ALJ gave

10   little weight to Ms. Stewart's medical-source statement because her opinions were (1) not

11   supported by her own chart notes, (2) she was not a medical doctor, and (3) she gave no

12   explanation for her opinion that the claimant could only sit for thirty minutes at a time before

13   needing to get up.[150]

14       Nurse practitioners are typically not an acceptable medical source for the purposes of

15   establishing impairments, unless they are working under the direct supervision of an acceptable

16   medical source. *Swanson v. Comm'r of Soc. Sec. Admin.*, 274 F. Supp. 3d 932, 936 (D. Ariz. 2017)

17   (finding a nurse practitioner to be an acceptable medical source when she worked closely with and

18   under the supervision of a medical doctor); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)

19   ("only licensed physicians and certain other qualified officials," limited to licensed or certified

20   psychologists, optometrists, podiatrists, and speech-language pathologists, are acceptable medical

21   sources under 20 C.F.R. §404.1513, and all other sources may be discounted by an ALJ, if the

22   ALJ "gives reasons germane to each witness for doing so.")

23       That said, nurse practitioners are "other" sources. 20 CFR 404.1513. "Other" sources are

24   acceptable in deciding the severity of an impairment. *See Solomon v. Astrue*, No. 10-CV-1548-

25   _____

26   [147] AR 387.

     [148] Mot. – ECF No. 20 at 11.

27   [149] AR 23.

28   [150] AR 24.

United States District Court
Northern District of California

RBL-JRC, 2011 WL 4368337 (W.D. Wash. Aug. 26, 2011) (remanding because the ALJ erred by considering the plaintiff's treating nurse practitioners as non-accepted medical sources and so gave their evidence limited weight, and holding that the ALJ should instead consider them as "other" sources and give them the proper re-evaluated weight); *see also Watkins v. Astrue*, No. 10-CV-5632-BHS-JRC, 2011 WL 6963109 at *6 (W.D. Wash. Dec. 2, 2011), *report and recommendation adopted*, No. C10-5632BHS, 2012 WL 37409 (W.D. Wash. Jan. 9, 2012) (citing *Bruce v. Astrue*, 557 F.3d 1113 (9th Cir. 2009) (the ALJ erred; the plaintiff's boyfriend was an acceptable "other" source, as are nurse practitioners, "an ALJ may not discredit 'lay testimony as not supported by medical evidence in the record'" simply by noting that the "other" source does not have medical expertise, unless there are reasons provided, germane to each witness, to disregard it) (cleaned up); *Swanson*, 274 F. Supp. 3d at 936.[151] This is especially the case when the "other" medical source is a treating source of some sort and has had the most, or most consistent, contact with the plaintiff's conditions. *See Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017) (the ALJ erred by not crediting the opinion of the plaintiff's treating nurse practitioner with greater weight as an "other" source when she treated the plaintiff at least ten times over two years).

Although nurse practitioners are "other" sources and not acceptable medical sources, the examining physician that the ALJ credited — Dr. McMillan, and Dr. Dixit — assessed the plaintiff as possessing knee pain, back pain, obesity, and mental-health limitations.[152] For example, Dr. McMillan said that the plaintiff had a history of degenerative disease of the knees and hand numbness.[153] Once these assessments were made by accepted medical professionals, the ALJ could consider "other" medical sources, such as Ms. Stewart's opinion, in deciding severity.

While the examining physicians did not find the plaintiff's impairments to be as severe or debilitating as Ms. Stewart did, the ALJ should have considered Ms. Stewart's opinion. Ms. Stewart saw the plaintiff nearly every month, and sometimes twice a month, from December 2014

---

[151] 20 C.F.R.416.913(d), which applies to all cases filed prior to May 2017.

[152] AR 99–100.

[153] AR 392.

United States District Court
Northern District of California

through at least November 2017.[154] The ALJ commented that Ms. Stewart's notes did not accurately reflect her opinion of the plaintiff's limitations. But throughout the more-than-three years that Ms. Stewart treated the plaintiff, she consistently recorded issues with the plaintiff's knees and back, including ordering MRIs and X-rays of both.[155] She recommended that the plaintiff attend physical therapy,[156] considered the plaintiff for bariatric surgery,[157] provided consistent steroid injections in both knees for pain,[158] and noted depression[159] and various other mental-health issues such as chronic PTSD and stress at home.[160] She recommended that the plaintiff consult with a licensed social worker, and she prescribed Prozac.[161] She spoke to the plaintiff's medical needs and status of the plaintiff. Accordingly, the ALJ erred by giving little weight to the medical opinions of Ms. Stewart.

### 3.   Whether the ALJ Erred in Rejecting the Plaintiff's Subjective Testimony

The plaintiff contends that the ALJ did not provide clear and convincing reasons to discount the plaintiff's testimony as not credible.[162] The court remands on this ground.

#### 3.1   Legal Standard

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether [the claimant has presented] 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Vasquez*, 572 F.3d at 591). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide

---

[154] AR 319–514.

[155] AR 347, 380, 382–84.

[156] AR 376, 499.

[157] AR 372.

[158] AR 319–514.

[159] AR 341.

[160] AR 341.

[161] AR 328, 341.

[162] Mot. – ECF No. 20 at 14.

United States District Court
Northern District of California

1    "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the

2    severity of the claimant's symptoms. *Id.* (internal quotation marks and citations omitted).

3        "At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or

4    else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. §

5    423(d)(5)(A).'" *Id.* at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "Factors

6    that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness,

7    inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained,

8    or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."

9    *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (cleaned up). "[T]he ALJ must identify what

10   testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v.*

11   *Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quotation omitted) *accord e.g.*, *Morris v. Colvin*, No.

12   16-CV-0674-JSC, 2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016).

### 3.2   Application

14       The ALJ found that the plaintiff's "medically determinable impairments could reasonably be

15   expected to cause the alleged symptoms."[163] But the ALJ subsequently found that the plaintiff's

16   statements "concerning the intensity, persistence and limiting effects of these symptoms are not

17   entirely consistent" with the evidence in the record.[164] The ALJ did not mention any malingering.

18       The plaintiff alleged several sources of pain, most notably in her back and knees.[165] The ALJ

19   did not provide specific, clear, and convincing evidence to reject the plaintiff's testimony about

20   those issues. Regarding the plaintiff's knee pain, the ALJ said that — other than plaintiff's

21   testimony — there was no evidence of a recommendation for knee surgery or the plaintiff

22   completing a course of physical therapy related to issues with her knees.[166] No medical evidence

23   mentions knee surgery. But there is evidence that the plaintiff had physical therapy for her

---

[163] AR 20.

[164] *Id.*

[165] AR 51–53.

[166] AR 21.

United States District Court
Northern District of California

knees.[167] Also, there is ample evidence in the record about the plaintiff's complaints regarding her pain.[168] The ALJ recognized that the plaintiff received repeated steroid injections for her knee pain, she fell, her knees gave out, and she needed a cane to walk.[169] The ALJ erred in discounting the plaintiff's subjective pain testimony based on the possibility that she did not complete her prescribed physical therapy.

Furthermore, the ALJ did not give specific, clear, and convincing reasons to disregard the plaintiff's testimony. He said that there were a lack of imaging tests to verify the sources of the pain[170] and that the record did not reflect "any imaging studies documenting any spinal injury or degeneration" other than an August 2014 MRI,[171] which was ordered but never completed due to transportation issues.[172] He noted that the plaintiff had travelled out of state. His assessment is to discount the lack of an MRI as the result of the plaintiff's unjustified inaction. But that implication is incorrect.[173] The record shows plaintiff's housing instability and her reliance on her daughter to transport her to her appointments.[174] Also, there was evidence of a spinal MRI in August 2015.[175] The ALJ did not provide clear and convincing evidence to discount the plaintiff's pain based on a lack of imaging.

Finally, the ALJ identified the plaintiff's activities — a Las Vegas trip with her sister, camping with family, and assisting with care of her grandchildren — as dispositive evidence that her "very limited activity" was not grounded in truth.[176] But the plaintiff told the ALJ that her sister drove

---

[167] AR 494, 500.

[168] AR 21, 470, 510, 512.

[169] AR 21.

[170] AR 20.

[171] AR 21.

[172] *Id.*

[173] *Id.*

[174] AR 334, 510.

[175] AR 347, 20.

[176] AR 21.

United States District Court
Northern District of California

her to both Las Vegas and to go camping.[177] She identified limited activities: she walked around for approximately a half an hour twice a day in Las Vegas and that, while camping, she was dropped off right outside her cabin and then sat on the porch most of the rest of the time.[178] She did not walk around much, cook, or go hiking.[179]

The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citation omitted). The Ninth Circuit has held that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. The plaintiff's Las Vegas and camping trips are such attempts. The court remands to reconsider on this ground too.

**4.  Whether the ALJ Erred in its Step Five Finding that the Plaintiff Could Perform Work that Existed in Significant Numbers in the National Economy**

The plaintiff contends that the ALJ incorrectly found that the plaintiff was not disabled at step five based on the VE's claim that she could perform the occupations of cashier II and silver wrapper.[180] The court remands on this ground.

At step five, if (considering residual-functional capacity, age, education, and work experience) the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner may sustain its burden at step five by posing hypothetical questions to a vocational expert that are based on a claimant's residual functional capacity. The vocational expert may give evidence about jobs that a hypothetical employee with the same residual functional capacity as the claimant would be able to perform. *See* 20 C.F.R. § 404.1520(g). A vocational expert's recognized expertise provides the necessary foundation for his or her testimony, and no

---

[177] AR 56.

[178] AR 57.

[179] AR 57–58.

[180] Mot. – ECF 20 at 16.

United States District Court
Northern District of California

1    additional foundation is required. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18. The

2    hypothetical questions must be based on a residual functional capacity for which there exists

3    substantial support in the record. *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989).

4        The ALJ's depiction of the claimant's impairments must be "accurate, detailed, and supported

5    by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). "A hypothetical

6    question posed to a vocational expert must 'include all of the claimant's functional limitations,

7    both physical and mental.'" *Brink v. Commissioner Social Sec. Admin.*, 343 Fed.Appx. 211, 212

8    (9th Cir. 2009) (quoting *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995).). "If a vocational

9    expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has

10   no evidentiary value to support a finding that the claimant can perform jobs in the national

11   economy." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Matthews v. Shalala*, 10

12   F.3d 678, 681 (9th Cir. 1993)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). While an

13   ALJ "need not include all claimed impairments in his hypotheticals, he must make specific

14   findings explaining his rationale for disbelieving any of the claimant's subjective complaints not

15   included in the hypothetical." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997)

16   (quoting *Copeland v. Bowen*, 861 F.2d 536, 540 (9th Cir.1988)). These restrictions on hypothetical

17   questions apply to the hypothetical on which the ALJ bases his findings. *See Lewis*, 236 F.3d at

18   517−18.

19       Because the ALJ's assessment here rests on grounds that the court remands on, the court

20   remands on this ground too.

21

22   **5.  Legal Authority Under the Appointments Clause**

23       The plaintiff contends that the ALJ who heard this case was not properly appointed under the

24   Constitution's Appointments Clause at the time of the hearing and so did not have the legal

25   authority to preside over the matter.[181] Given the court's holdings, it does not reach this issue.

26

27

28   ───────────────
[181] USCS Const. Art. II, § 2, Cl 2; Mot. – ECF 20 at 16.

### 6.   Remand for Further Proceedings

The court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).

Generally, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019 (quotation omitted).

The court remands the case.


## CONCLUSION

The court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion for summary judgement, and remands the case for further proceedings consistent with this order.


**IT IS SO ORDERED.**

Dated: August 28, 2020

_____

LAUREL BEELER
United States Magistrate Judge